

**SO ORDERED.**

**SIGNED this 24 day of April, 2006.**

/s/ Dale L. Somers
Dale L. Somers
**UNITED STATES BANKRUPTCY JUDGE**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

In Re:

| | |
|---|---|
| TIMOTHY JOHNSON and | CASE NO. 03-16979 |
| SUSAN JOHNSON, | CHAPTER 7 |
|     Debtors. | |

LINDA S. PARKS, Trustee,
    Plaintiff,
v.                                                                                   ADV. NO. 04-5239

GORGES MOTOR COMPANY, INC.,
    Defendant.

GORGES MOTOR COMPANY, INC.
    Third Party Plaintiff,
v.

TIMOTHY JOHNSON, SUSAN
JOHNSON, and CREDIT UNION OF
AMERICA,
    Third Party Defendants.

**MEMORANDUM AND ORDER DENYING
AVOIDANCE AND TURNOVER**

This adversary proceeding came on for trial on January 17, 2006. Plaintiff, Linda S. Parks, Chapter 7 Trustee (hereafter Trustee), appeared by Gaye Tibbets of Hite, Fanning and Honeyman, L.L.P. Defendant/Third Party Plaintiff, Gorges Motor Company, Inc. (hereafter Gorges), appeared by Sarah L. Newell of Klenda, Mitchell, Austerman & Zuercher, L.L.C. Third Party Defendants, Timothy and Susan Johnson (hereafter Debtors), appeared by Steve E. Johnson of Bauer, Pike, Pike & Johnson, Chtd. Timothy Johnson was also present. Third Party Defendant, Credit Union of America (hereafter Credit Union), appeared by Andrew Morino and James R. Hanson of Gilliland & Hayes, P.A.

The Trustee's complaint seeks to avoid a postpetition transfer from the Debtors to Gorges pursuant to 11 U.S.C.A. § 549 and to recover the transfer from Gorges pursuant to 11 U.S.C.A. § 550.[1] Prepetition Debtors purchased a vehicle from Gorges and wrote and delivered a check to Gorges on that date for the price of the vehicle. It was agreed that the funds for payment of the check were to be the proceeds of a loan from the Credit Union to William Johnson, Debtor Timothy Johnson's father. The day before filing of the petition, the Credit Union directly deposited the loan proceeds into Debtors' credit union account to cover the check Timothy Johnson had written to Gorges. The check cleared two days after the bankruptcy petition was filed. This Court has jurisdiction.[2]

---

[1] This case was filed before October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 become effective. All statutory references to the Bankruptcy Code are to 11 U.S.C.A. §§ 101 - 1330 (2004), unless otherwise specified. All references to the Federal Rules of Bankruptcy Procedure are to Fed. R. Bankr. P. (2004), unless otherwise specified.

[2] This Court has jurisdiction pursuant to 28 U.S.C.A. § 157(a) and §§ 1334(a) and (b) and the Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective July 10, 1984. A trustee's proceeding to require turnover of estate property is a core proceeding which this

2

Case 04-05239   Doc# 76   Filed 04/24/06   Page 2 of 15

For the reasons stated below, the Court holds that the Trustee cannot recover from Gorges.  The court further denies as moot the third-party complaint filed by Gorges against the Debtors and the Credit Union alleging that if Gorges is liable to the Trustee, then the Credit Union and the Debtors are liable to Gorges.

**FINDINGS OF FACT.**

When considering filing for bankruptcy, Debtors discussed with Roy Doonan, the manager of the Credit Union, payments required on an existing vehicle loan.  They were advised that it would better to surrender that vehicle and purchase a substitute vehicle and followed that advice.  Debtors' credit rating would not permit the Credit Union to make a loan directly to the Debtors.  Debtor Timothy Johnson's Father, William Johnson, agreed he would assist in the purchase of a substitute vehicle by obtaining a loan from the Credit Union for that purpose.  Debtor agreed when he was back on his feet he would take over the loan payments, but there was no specific agreement about his assumption of the obligation.

Debtors met with their attorney and signed their undated schedules and other bankruptcy documents on or about December 14, 2003.[3]  During the week ending December 22, 2003, Debtor called his bankruptcy counsel to confirm that the case had been filed.  During the first call, he was informed that it would be filed shortly.  Later in the week in the morning before traveling from Great Bend to Wichita to shop for the substitute vehicle, Timothy Johnson again

---

Court may hear and determine as provided in 28 U.S.C.A. § 157(b)(2)(E).  The parties have stipulated that venue is proper, that the Court has jurisdiction of the parties and of the subject matter, and that this Court may try this adversary proceeding to final judgment.

[3] The petition, statement of affairs, and schedules are dated December 23, 2003, but Debtor testified that they were undated when signed.

3

called his attorney's office and was informed by his attorney and by his attorney's secretary that the Chapter 7 petition had been filed.

On December 22, 2003, Debtor entered into a contract with Gorges to purchase a 2000 Pontiac Grand Prix for the total price of $10,007.08. While at the dealer in Wichita, Debtor contacted the Credit Union regarding payment. He was advised to pay for the vehicle by a check drawn on the Debtors' Credit Union account in the amount of $10,007.08 and that his father should come into the Credit Union the next day to apply for a loan, the proceeds of which would be deposited to the Debtors' account to cover the check. At that time, it was the Credit Union's customary business practice when financing vehicle purchases, to advise their customers to issue a check to the seller for the amount of the unpaid sale price and then to deposit the purchase money loan proceeds into the account to cover the purchase price.

Pursuant to prior discussion, on December 23, 2003, William Johnson applied for and was approved for a loan in the amount of $10,007.08. The loan proceeds were deposited into Debtors' account at the Credit Union. Debtors had no permission to use the loan proceeds for any purpose other than payment for the Pontiac. The check dated December 22, 2003, which the Debtor had delivered to Georges when he purchased the car, cleared the Credit Union on December 26, 2003. The Credit Union was granted a security interest in the Pontiac to secure the loan to Debtor's father, and the security interest is perfected.

Contrary to the Debtor's intention, the vehicle was purchased, the check was written and delivered, and the proceeds of his father's loan were deposited to the account before the Chapter 7 petition was filed on December 24, 2003. The check payable to Gorges in the amount of $10,007.08 was honored post petition. The parties find themselves in an unfortunate situation

4

due entirely to the actions of Debtors' counsel erroneously informing the Debtors that the Chapter 7 petition had been filed before the vehicle was purchased on December 22, 2003.

The former manager of the Credit Union testified that it was the Credit Union's business practice to honor checks even though an overdraft would result. A review of Debtor's account statement for December 2003 shows that the account had a negative balance on December 2, 3, 16, 17 and 30. During the period of December 22, 2003 through December 26, 2003, Debtor's account had balances, deposits, and withdrawals as shown on the following chart:

| Date | Opening Balance | Deposits | Withdrawals | Closing Balance |
| --- | --- | --- | --- | --- |
| 12/22 | 216.24 | 0.00 | 108.06 | 108.18 |
| 12/23 | 108.18 | 10,007.08 | 168.49 | 9,946.77 |
| 12/24 | 9,946.77 | 627.00 | 66.67 | 10,507.10 |
| 12/26 | 10,507.10 | 449.56 | 10,098.65 | 858.01 |

Because of the practice of honoring checks which create overdrafts, the Credit Union would have honored the check given to Gorges for purchase of the vehicle even if it had been submitted on December 23, when the balance was less than $10,007.08.

The Trustee made demand for the $10,007.08 from Gorges on May 31, 2004. This action was filed on September 10, 2004.

**POSITIONS OF THE PARTIES.**

Trustee contends that the funds which Gorges obtained on December 26, 2003, was an unauthorized post-petition transfer from the Debtors which the Trustee has a right to avoid under §549(a) and that she may recover the transfer from Gorges pursuant to § 550. Section 549(a) provides:

>     (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate-
>         (1) that occurs after the commencement of the case; and
>         (2) (A) that is authorized only under section 303(f) or 542(c) of this title; or
>             (B) that is not authorized under this title or by the court.

Gorges agrees the $10,007.08 was transferred when the check was honored and is therefore a post-petition transfer.[4] However, it contends, relying upon the earmarking doctrine, the transfer can not be avoided because it was not property of the estate. It contends that the $10,007.08 in the Debtors' account was earmarked for payment of the check delivered in payment for the car purchased from Gorges and that the earmarking doctrine, recognized as a defense to a § 547(b) preference actions, is applicable to avoidance under § 549(a). The Trustee responds that expansion of the earmarking doctrine from its origin as a defense to a allegedly preferential payment of a debt using funds of a guarantor has been rejected in this circuit and the doctrine cannot be expanded to apply to an avoidance action under § 549.

**ANALYSIS.**

Our analysis begins with commentators' explanations of the judicially created earmarking doctrine in preference actions. Norton states:

> The earmarking doctrine is accepted as a valid defense to a preference action. It is an equitable doctrine which provides that when a new lender makes a loan to enable a debtor to pay a specified former lender, those funds are "earmarked" for that creditor. If the debtor exercises no control over the disposition of

---

[4] *Wittman v. State Farm Life Ins. Co., Inc. (In re Mills)*, 176 B.R. 924, 926-28 (D. Kan. 1994), citing *Barnhill v. Johnson*, 503 U.S. 393 (1992).

6

the earmarked funds, the funds do not become property of the debtor's estate, and no preference occurs.[5]

Collier states:

> Under the "earmarking doctrine," funds provided to a debtor for the purpose of paying a specific indebtedness may not be recoverable as a preference from the creditor to which they are paid, on the premise that the property "transferred" in such a situation was never property of the debtor and so the transfer did not disadvantage other creditors. One creditor has been substituted for another thus, when new funds are provided by the new creditor to or for the benefit of the debtor for the purpose of paying the obligation owed to the old creditor, the funds are said to be "earmarked" and the payment is held not to be a voidable preference.[6]

The judicially created earmarking doctrine "first arose under the Bankruptcy Act in codebtor cases - the new creditor, who was obligated on an existing debt as a guarantor or surety, provided the debtor with funds to pay the old creditor."[7] Earmarking was expanded to the situations where the new lender was not a guarantor[8] and where the proceeds of the new loan were paid to the debtor with the understanding that they will be paid to the creditor in satisfaction of his claim."[9] Because of the similarity of avoidance actions under § 549 to

---

[5] 3 Norton Bankruptcy Law and Practice 2d § 57:30 (Norton, auth. & ed.-in-chief 2005). Future citations shall be to volume and section only.

[6] 5 *Collier on Bankruptcy* ¶ 547.03[2] (Alan N. Resnick & Henry J. Sommer eds.-in-chief, 15th ed. rev. 2005). Future citations shall be to volume and paragraph only.

[7] *Manchester v. First Bank & Trust Co. (In re Moses)*, 256 B.R. 641, 645 (10th Cir. BAP 2000).

[8] 3 Norton § 57:30.

[9] 5 Collier ¶ 547.03[2].

7

preference actions under § 547(b), the doctrine has been held to be available in avoidance actions under § 549.[10]

Some courts are reluctant to expand the doctrine beyond its origin.[11] The Tenth Circuit Bankruptcy Appellate Panel in *In re Moses*[12] adopted this position. It reasoned that the "equities in favor of the guarantor or surety, the risk of his having to pay twice if the first payment is held to be a voidable preference, are not present where the new lender is not a guarantor himself."[13] Application of the doctrine when there is no guarantor was characterized as not helping either the new creditor or the debtor, but simply preferring "the old creditor, who had nothing to do with earmarking the funds, and who, in equity, deserves no such benefit."[14] The panel found the earmarking doctrine undermines the goals of § 547(b) and is not provided for in § 547.[15] It characterized cases applying the doctrine as assuming that "funds lent to the debtor by the new creditor are not the debtor's property if the new creditor and the debtor intended them to be used to pay the old creditor, or if the debtor did not control the new funds."[16] The Panel rejected this assumption and noted that a debtor's interest in property loaned to it by a new creditor to pay the

---

[10] *Musso v. Brooklyn Navy Yard Dev. Corp. (In re Westchester Tank Fabricators, Ltd.)*, 207 B.R. 391 (Bankr E.D.N.Y. 1997); *Herzog v. Sunhauserman (In re Network 90 Degrees, Inc.)*, 98 B.R. 821 (Bankr N.D. Ill. 1989), aff'd 126 B.R. 990 (D.N.D.Ill. 1991).

[11] 3 Norton § 57:30.

[12] *In re Moses*, 256 B.R. at 641.

[13] *Id.* at 646.

[14] *Id.* at 647.

[15] *Id.*

[16] *Id.* at 648.

8

debt of the old creditor must be examined within the context of § 541, not the earmarking doctrine.[17]

This Court declines to hold that the earmarking doctrine constitutes a defense to the Trustee's § 549. The doctrine does not fit factually. The funds to pay Gorges were provided by a loan from the Credit Union to the Debtor's father. Because Debtor has no binding obligation to repay his father, there is no new creditor of the Debtors, as required by the earmarking doctrine. Even if this case fit the basic fact pattern, application of the doctrine here would require expansion of the doctrine beyond its origins, contrary to the ruling of the Tenth Circuit BAP in *In re Moses*. The Debtor's father was not a guarantor of the obligation to Gorges. In addition, this case arises under § 549 and is not a preference claim under § 547(b), the situation for which the doctrine was initially recognized. This Court, in accord with the suggestion of *In re Moses*, will analyze Gorge's defense that the transfer was not of property of the estate using the § 541 definition of property of the estate.

Upon the filing of a petition, § 541(a)(1) provides that an estate is created which is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case," except those interests excluded by §§ 541(b) and (c)(2). Subsection (d) provides, "[p]roperty in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, . . . becomes property of the estate under subsections (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold." "Because the debtor does not own an equitable interest in property he holds in trust for another, that interest is not

---

[17] *Id*. at 648 n.5.

'property of the estate.'"[18] The assets held by a debtor as trustee for an express trust, as well as implied trusts, including constructive trusts and resulting trusts, are therefore excluded from the estate.[19] "Whether an asset is estate property is determined by examining the nature of the asset. . . ."[20] Although Federal law defines the interests included in the estate, the property interests are created by and defined by state law.[21]

The Court therefore examines Kansas law to determine whether the proceeds of the loan from the Credit Union to the Debtor's father which were deposited in the Debtors' account were property of the estate. Under these circumstances, the Court is convinced that under Kansas law a resulting trust arose when the funds were deposited in the account. Resulting trusts have long been recognized in Kansas with respect to both real property[22] and personal property.[23] The

---

[18] *Begier v. Internal Revenue Service*, 496 U.S. 53, 59 (1990).

[19] *E.g., Id.* at 61 (debtor's payments of withheld federal income and FICA taxes and excise taxes collected from its customer were not transfers of property of the debtor but were instead transfers of property held in trust); *United States Dep't of Energy v. Seneca Oil Co. (In re Seneca Oil Co.)*, 906 F.2d 1445 (10th Cir. 1990) (constructive trust); *First Nat'l Bank of Herington v. Hanschu (In re Hanschu)*, 119 B.R. 805 (D. Kan. 1990) (remanding case for consideration of whether debtor was holding property in resulting trust).

[20] *In re Roth*, 289 B.R. 161, 165 (Bankr. D. Kan. 2003).

[21] *Butner v. United States*, 440 U.S. 48, 55 (1979).

[22] K.S.A. 58-2406; *e.g., University State Bank v. Blevins*, 227 Kan. 40, 605 P.2d 91 (1980) (affirming finding of valid purchase money resulting trust in favor of father where evidence established existence of an agreement that son and his wife were to hold property in trust for father who paid purchase money and circumstances rebutted presumption of a gift).

[23] *Harrington v. Harrington*, 172 Kan. 549, 241 P.2d 513 (1952) (holding that since the husband and wife had agreed the sell their homestead and buy a new place and wife's assent to such agreement had been induced by the husband's promise to take title to the new place in their names as joint tenants, a resulting trust was created in favor of the wife in the proceeds from the sale of the homestead); *Winsor v. Powell,* 209 Kan. 292, 497 P.2d 292 (1972) (seeds of a resulting or constructive trust in bank accounts and savings and loan accounts were sown when a father transferred assets to accounts titled in joint tenancy with him and his daughter intending that she hold the assets for the benefit of all children, that she understood and accepted title on that basis, but repudiated her obligation after her father's death).

Restatement (Second) of Trusts, followed in Kansas when there is no authority directly on point,[24] states the general principles of resulting trusts as follows:

> A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest therein and where the inference is not rebutted and the beneficial interest is not otherwise effectively disposed of. Since the person who holds the property is not entitled to the beneficial interest, and since the beneficial interest is not otherwise disposed of, it springs back or results to the person who made the disposition or to his estate, and the person holding the property holds under a resulting trust for his estate.[25]

The existence of a resulting trust is shown by circumstances which raise an inference that the person making a transfer of property did not intend to give the transferee the beneficial interest.[26] The matter is inherently fact specific. A resulting trust may be proved by parol or by circumstantial evidence, and the usual burden of proof, not the enhanced burden applicable in fraud cases, is applied.[27]

"A trust cannot be created unless there is trust property."[28] A trustee of a resulting trust ordinarily takes the property subject to a fiduciary duty to "convey the property to the beneficiary or in accordance with his directions."[29] Neither the trustee's control of the funds

---

[24] *In the Matter of the Estate of Somers*, 277 Kan. 761, 89 P.3d 898, 904 (2004).

[25] Restatement (Second) of Trusts, ch 12, topic 1, general principles, introductory note (1959).

[26] *Id*.

[27] *In re Hanschu*, 119 B.R. at 807 (applying Kansas law).

[28] Restatement (Second) of Trusts § 74 (1959).

[29] Restatement (Second) of Trusts at ch. 12, topic 1, introductory note (1959).

11

nor commingling of the trust property with the trustee's own property defeats the trust.[30] The trustee's control of the assets is inherent in the status of trustee of a resulting trust. Despite commingling or even transfer, the claimant may identify the trust property by tracing the property using the lowest intervening balance rule[31] and obtain priority over the trustee's general creditors to the extent the trust property is identified.[32]

It is well established that property held by a debtor in a resulting trust is not property of the estate.[33] Cases have found resulting trusts where a debtor served as a conduit and received money to be paid to another. In *In re Globe Store Acquisition Co.*,[34] the debtor department store, as agent for a utility company, received cash from utility customers for payment of their bills. The money was deposited in the debtor's general account and paid to the utility by check. The court held under Pennsylvania law the cash to the extent it was identified and traced was held in resulting trust and was not property of the estate. *In re UDI Corp.*[35] is similar. The

---

[30] Id. at § 202, cmt. on subsection (2); *Weiner v. A.G. Minzer Supply Corp. (In re UDI Corp.)*, 301 B.R. 104, 114-115 (Bankr. D. Mass. 2003). In defense to Gorges' position that the earmarking doctrine applies, the Trustee raised defenses based upon the Debtors' control of the funds and commingling with the Debtors' own property. See Trustee's Trial Brief, doc. 66. Those issues are not relevant to the finding of a resulting trust. Control by the Debtor as trustee is assumed when there is a resulting trust, and commingling gives rise to the need to trace property, but does not defeat the trust.

[31] *In re Seneca Oil Co.*, 906 F.2d at 1451.

[32] *Pa. Power & Light Co. v. The Globe Store Acquisition Co., Inc. (In re The Globe Store Acquisition Co., Inc.)*, 178 B.R. 400, 403 (Bankr. M.D. Pa. 1995); see *Estate of Miller*, 225 Kan. 655, 594 P.2d 167 (1979) (adopting rule that where a life tenant with a power of disposition commingles funds from the estate with his own funds and thereafter the commingled funds are partially expended, the rebuttable presumption arises that the life tenant first expended his own funds before expending the funds received by him as life tenant).

[33] 5 Collier ¶ 541.11[3].

[34] *In re The Globe Store Acquisition Co., Inc.*, 178 B.R. at 400.

[35] *In re UDI Corp.*, 301 B.R. at 104.

Chapter 7 trustee brought a preference action to recover rebate payments that the debtor, in its capacity as purchasing agent for a consolidated pool of buyers, had passed on to pool members from lump sum payments it received from manufacturers with which the members placed orders. Under Massachusetts agency and resulting trust principles, the court held the rebates were not property of the estate. The court noted that under conduit cases, property that merely passes through the debtor is not property of the estate, citing *Globe Store Acquisition Co.* and other cases. In *In re Cowan*,[36] sons of a Chapter 7 debtor sought a declaration that a certified check held by their debtor/mother was not property of her bankruptcy estate. The check represented the proceeds of accounts in the names of the debtor's children to which they had deposited money earned working at a grocery store and as gifts. The accounts were closed prior to their parents' divorce and the proceeds placed in the name of the debtor. The court found the check not property of the estate based upon a resulting trust under Arkansas law.

In this case, the loan proceeds when deposited into the Debtors' account were held in a resulting trust. Those funds were deposited into the Debtors' account based upon the erroneous information provided by Debtors' counsel that the bankruptcy had been previously filed. If the information given to Debtor had been accurate, the funds would not have been property of the estate because they would not have been in the account on the date of filing the Chapter 7 petition.[37] The Credit Union directed the Debtor to draw and deliver the check payable to Gorges and made the deposit to the account as a means of disbursing the loan proceeds to

---

[36] *Cowden IV v. Ramsay (In re Cowden)*, 154 B.R. 531 (Bankr. E.D. Ark. 1993).

[37] 11 U.S.C.A. § 541(a)(1) (estate is comprised of all legal and equitable interests of the debtor in property as of the commencement of the case); 11 U.S.C.A. § 541(a)(5) (only the specific property interests, not relevant to this case, which are acquired within 180 days of filing also constitute property of the estate).

13

Gorges. The account served as a conduit for disbursement. In effect, the Debtors acted as the agents of the Credit Union to assure delivery of the loan proceeds in accord with the purpose of the loan.

The deposit was made on December 23, 2003, the day before the Debtors filed for relief. On the date of filing, December 24, 2003, the account had an opening balance of $9,946.77, $60.31 less that the loan amount. Using the lowest intermediate balance test, one could conclude that the amount held in a resulting trust on the date of filing was $9,946.77. However, the circumstances of this case convince the Court that the res of the resulting trust was the entire loan proceeds of $10,007.08. The Credit Union had a policy of honoring overdrafts. If the check payable to Gorges had been presented on the date of filing, it would have been honored, even if a small overdraft would have resulted. Therefore the entire transfer made to Gorges on December 26, 2003, was a transfer of trust property to the beneficiary and was not property of the estate.

For the foregoing reasons, the Court denies the Trustee's complaint. The post petition honoring of the prepetition check payable to Gorges for the amount of the loan proceeds was not a transfer of property of the estate. The Debtor held the loan proceeds as trustee of a resulting trust for the benefit of Gorges. The funds were not property of the estate by virtue of 541(d), because the Debtors had no beneficial interest in the proceeds of the loan. Section 549 allows the Trustee to avoid only postpetiton transfers of property of the estate and § 550 allows the Trustee to recover only avoided transfers from the transferee. The Trustee may not recover from Gorges. In addition, the claims of Gorges against the Credit Union and the Debtors are moot in light of the Court's ruling that the Trustee cannot recover against Gorges under § 550.

14

The foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based upon this ruling will be entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

###